```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA

OLESS BRUMFIELD, et al.,              CIVIL ACTION

and

UNITED STATES OF AMERICA

VERSUS                                NO. 71-1316

WILLIAM J. DODD SUPERINTENDENT OF
PUBLIC EDUCATION, et al              SECTION "B"(2)
```

### ORDER AND REASONS

Defendant-Intervenors filed a motion to vacate this Court's April 7, 2014 order under a 1985 consent decree issued in the above-captioned case. For the reasons enumerated below, **IT IS ORDERED** that Defendant-Intervenors' Motion to Vacate (Rec. Doc. No. 271) be **DENIED**.

Facts and Procedural History

On August 22, 2013 the United States filed a motion for an injunction against the State of Louisiana pursuant to a 1985 consent decree issued in this case. This Court then requested briefs from the parties on two issues:

> (1) Does the desegregation order issued in *Brumfield v. Dodd,* 405 F. Supp. 338 (E.D. La 1975) apply to the State of Louisiana's Student Scholarships for Educational Excellence Program ("Voucher Program") so

1

>    as to require the State to obtain authorization from
>    the Court prior to implementation?
>    (2) If the desegregation order applies to the Program,
>    is there any need to amend existing orders to ensure a
>    process of review of the Voucher Program or similar
>    ones in the future?

(Rec. Doc. No. 212, September 18 Order)

The United States amended its filing on September 23, 2013, withdrawing its request for an immediate injunction after receiving commitments from the State to share certain information.

On September 30, 2013, the Defendant-Intervenors ("Intervenors"), a group of parents representing their minor children, along with a non-profit organization, the Louisiana Black Alliance for Educational Options, filed a Motion to Intervene, in order to oppose the United States' requested injunction, already withdrawn, against the Louisiana voucher program. On November 15, 2013 this Court denied the Motion to Intervene, but permitted the Intervenors to file a brief as amicus curiae. The Intervenors appealed the denial of their Motion to Intervene to the Fifth Circuit.

At a hearing November 22, 2013, at which the Intervenors were represented, this Court ruled that the prior injunction and consent decree applies to the voucher program in question, and requested proposals from each side

2

as to a specific information-sharing process that would satisfy the *Brumfield* requirements.

After receiving proposals from the parties, on April 7, 2014 this Court issued an order establishing a process by which the State of Louisiana and the United States will share information about Louisiana's voucher program. The method for sharing the information was largely agreed to by both the United States and the State of Louisiana. *Compare* (Rec. Doc. No. 261) with (Rec. Doc. No. 262). The primary controversy between the parties was over when the information was required to be submitted to the United States, i.e. how long before parents were notified that they had been selected in the voucher lottery was the information to be accessible to the United States. The Court resolved the controversy by making the information due "ten calendar days prior to the day the State sends award notifications to families. . . ." (Rec. Doc. No. 240 at ¶ 4). The Court chose this time period intentionally to eliminate any possible disruption to the program. In the preceding school year parents were not notified that they were awarded a placement until at least ten days following the lottery being conducted. *See* Affidavit of Laura Perry, Rec. Doc. No. 206-1 at ¶ 7; *see also* Second Declaration of John White, Rec. Doc. No. 251-1 at ¶¶ 9-10. By making the

3

information due "ten calendar days prior to" the award date, the information-sharing schedule works within the existing schedule for the program, and avoids any delay in awarding vouchers.

The Fifth Circuit reversed this Court's decision denying the Intervenors' Motion to Intervene on April 10, 2014, and ordered they be allowed to participate as parties in the case.

On May 5, 2014 the Intervenors filed the instant Motion to Vacate.

Law and Analysis

In their Motion to Vacate, Intervenors state three purported grounds for relief: (1) Rule 60(b)(4) voids the court's order; (2) applying *Brumfield* orders to the voucher program is no longer equitable under Rule 60(b)(5); and (3) the Court should vacate its prior order under Rule 59(e).

Claim One

Intervenors' first argument is not supported by Rule 60(b)(4). Under Rule 60(b), a "court may relieve a party or its legal representatives from a final judgment" if "(4) the judgment is void." The Intervenors claim that this Court lacks subject matter jurisdiction over the voucher program, which renders the judgment void. This Court addressed at the November 22 hearing its jurisdiction over

4

the voucher program.[1] The Court finds no justification in the instant motion to alter its prior opinion. The voucher program clearly falls under the injunction and consent decree in this case, granting the Court subject matter jurisdiction.

Claim Two

In Claim Two, Intervenors argue they are entitled to relief because applying the order is "no longer equitable" (Fed. R. Civ. P. 60(b)(5)) and there has been "'a significant change either in factual conditions or in law' [that] renders the continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 443, 447 (2009) (*quoting Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992)).

Specifically Intervenors claim *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002) precludes applying the 1985 *Brumfield* consent decree to the Louisiana voucher program. In *Zelman* the Supreme Court found that a Cleveland City School District voucher program that permitted the use of vouchers at religious schools was not a violation of the Establishment Clause, because the Cleveland program was one

---

[1] "…[T]his particular case, in my opinion, as it relates to the voucher program to private schools would still fall under the ambit of the original consent decree and subsequent injunctive orders and amendments to court orders in this case." Hr'g Tr., Rec. Doc. No. 247 at 49:17-21, Nov. 22, 2013.

5

of "genuine and independent private choice" which "permit[ted] government aid to reach religious institutions only by way of the deliberate choices of numerous individual recipients." 536 U.S. at 652. In the Cleveland program checks from the school district "[we]re made payable to the parents who then endorse[d] the checks over to the chosen school. § 3313.979." *Zelman*, 536 U.S. at 646. Parents also had a number of different schools, public and private, secular and religious, to choose from in *Zelman.*

The Court finds *Zelman* does not qualify as "a significant change either in factual conditions or in law" rendering this Court's judgment no longer equitable because *Zelman* was issued in 2002, twelve years before this Court's April 7, 2014 order. The Court was able to consider that ruling in its prior order. *See* Defendant-Intervenors' Brief as *Amicus Curiae*, Rec. Doc. No. 230-1 at 8 (arguing that *Zelman*'s focus on "true private choice" applies to the voucher program in this case). Even if the Court considered *Zelman* applicable, as "a significant change. . . in law" after the 1985 consent decree, *Zelman* is distinguishable from the case at hand.

In the Louisiana voucher program a parent may preference a school in the initial scholarship application, but does not directly choose the school his or her child

6

attends. Rather, the parents are allowed to indicate school preferences on the application form, then "[t]he scholarship recipient [is] placed through the random selection process and according to his indicated preferences," by a lottery system that takes into account those stated preferences. La. Rev. Stat. Ann. § 17:4015(4). *See also* Affidavit of Lauren Perry, Chief of Staff of the Office of Portfolio for the Louisiana Department of Education, Rec. Doc. No. 206-1.

After receiving notification of its scholarship award and school placement, a family may accept the award and the school, or reject the award and try for a different school placement in the next round of scholarship placements. *Id.*[2] If a family accepts the placement at a given school, the Louisiana Department of Education will then "[r]emit scholarship payments to participating schools on behalf of a scholarship recipient." La. Rev. Stat. Ann. § 17:4015(5).

In sum, the program in *Zelman* is substantially dissimilar to the Louisiana program. The fact that the Supreme Court found critical to defeat constitutional challenges in the Cleveland program, i.e. "genuine and independent private choice," does not exist in the

---

[2] The 2013-2014 Scholarship placement process had three rounds, and the State indicated the 2014-2015 process would have two rounds. (Second Declaration of John White, Rec. Doc. No. 251-1 at ¶3).

7

Louisiana program. Rather, the lottery system is used by the State to randomly select and then "place[]" students in available schools, albeit taking into account the families' ranked preferences. Additionally, unlike the Cleveland voucher program, Louisiana parents do not receive money directly from the State to later spend on educational options. Rather, once parents have accepted their child's placement, the State pays the scholarship money directly to the private school. La. Rev. Stat. Ann. § 17:4015 (5). Louisiana parents thus do not exercise "true private choice" in their selection of schools, as was the case with the *Zelman* families.

Furthermore, even if the State did not use its existing lottery system to award students with school placements, and families were allowed to choose schools for their children independently, the parents would only be able to choose schools that were subject to the existing orders in this case and to the Fourteenth Amendment's prohibition on state aid to racially segregated schools. This is distinguishable from *Zelman*, where the relevant Constitutional provision was the Establishment Clause. There the Court specifically held that only a portion of the voucher funds would be used for religious education, which was the only type of school where funding would be

8

Constitutionally suspect. *Zelman*, 536 U.S. at 653. Here, in contrast, 100% of the voucher funds will be spent on private schools subject to the orders of this case – as all private schools in Louisiana receiving state aid are subject to the 1985 consent decree prohibiting funding to advance segregation. Further, unlike the Establishment Clause challenge in *Zelman*, all funding to private schools (including non-religious ones) is subject to the Fourteenth Amendment Equal Protection Clause. *Norwood v. Harrison*, 413 U.S. 455, 466 (1973) ("A State may not grant . . . tangible financial aid . . . if that aid has a significant tendency to facilitate, reinforce, and support private discrimination."). Accordingly, relief is not valid under 60(b)(5).

<u>Claim Three</u>

Intervenors also request this Court consider their Motion to Vacate under Rule 59(e), which allows a party to move to "alter or amend a judgment." Intervenors list no substantive claims besides the claims listed in their 60(b)(4) claim for relief, and this Court finds no reason to vacate its previous order under 59(e).

<u>Conclusion</u>

For the reasons enumerated above, **IT IS ORDERED** that

9

Defendant-Intervenors' Motion to Vacate be **DENIED**.

New Orleans, Louisiana, this 1st day of August, 2014.

_____
UNITED STATES DISTRICT JUDGE